THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOSEPH TOTH, PLAINTIFF IN ERROR.

Argued March 16, 1914—Decided June 15, 1914.

1. An indictment returned by a grand jury drawn on November 24th, 1913, and impaneled and sworn on December 9th, 1913, pursuant to the provisions of the "Fielder act" (*Pamph. L.* 1913, *p.* 803), is a valid indictment as against an objection that it was not found by a grand jury drawn, impaneled and sworn according to law, since the "Chancellor-Sheriff act" (*Pamph. L.* 1913, *p.* 828), by which the "Fielder act" was ultimately repealed, by its terms was not to take effect until November 25th, 1913, and on November 22d, 1913, was decided by the Supreme Court to be unconstitutional, which decision was not reversed by the Court of Errors and Appeals until January 23d, 1914.

2. A decision of the Supreme Court is the law of the state until reversed by the Court of Errors and Appeals, and acts done by officials in pursuance of the law thereby declared, prior to such reversal, are valid so far as they involve the interests of the public or third persons.

3. The legality of a grand jury does not depend at all upon the validity or invalidity of the title of the officer by whom such body is selected or drawn. If the title of such officer is colorable, indictments found by a grand jury selected or drawn by him are as impregnable against attack as if its members had been selected or drawn by an officer whose title is unimpeachable.

---

On error to the Middlesex Oyer and Terminer.

For the plaintiff in error, *Russell E. Watson.*

For the state, *George S. Silzer.*

The opinion of the court was delivered by

TRENCHARD, J. The defendant, Joseph Toth, was indicted by the Middlesex county grand jury for murder. He was convicted of murder in the first degree.

The record discloses that, before entering the plea of not guilty, the defendant moved "to quash the indictment on the ground that the grand jury which returned it was impaneled

and sworn and constituted under the act of May 27th, 1913 (*Pamph. L., p.* ·803), which had been superseded by the act of May 29th, 1913 (*Pamph. L., p.* 828)."

The motion was overruled and an exception taken, and that action is assigned as a reason for reversal.

We are of opinion that the motion to quash was properly overruled.

The following is a statement in chronological order of the pertinent events and facts:

On May 27th, 1913, the so-called "Fielder act" (*Pamph. L.* 1913, *p.* 803) was approved. It provided for a new method of selecting and drawing grand and petit juries, and by its terms it took effect immediately.

On May 29th, 1913, the so-called "Chancellor-Sheriff act" (*Pamph. L.* 1913, *p.* 828) was approved. By this act the juries were to be selected and drawn by a commission consisting of the sheriff and a commissioner · appointed by the Chancellor, instead of by the sheriff alone as under the "Fielder act." It provided that "all acts and parts of acts inconsistent with this act are hereby repealed, and this act shall take effect immediately, but its provisions, except as to the referendum herein contained shall remain inoperative as a law of this state until the legal voters of the state voting at the next general election held after the approval of this act for the election of the members of the general assembly have adopted the provisions of this act in the manner hereinafter provided. * * * And if the greater number of votes cast with reference to the adoption or rejection of this act favor the adoption of this act, the act shall become effective as a law of this state on the fourth Tuesday of November, one thousand nine hundred and thirteen." It was so approved at the polls.

On November 22d, 1913, the Supreme Court decided the "Chancellor-Sheriff act" to be unconstitutional.

On November 24th, 1913, in accordance with the provisions of the "Fielder act," there was drawn the grand and petit jurors to serve for the next ensuing term of the courts of Middlesex county.

On November 25th, 1913, the "Chancellor-Sheriff act" would have become effective had it not been declared unconstitutional by the Supreme Court.

On December 9th, 1913, the grand jury was impaneled and sworn pursuant to the provisions of the "Fielder act."

On January 23d, 1914, the Court of Errors and Appeals reversed the decision of the Supreme Court and decided the "Chancellor-Sheriff act" to be constitutional. *Hudspeth* v. *Swayze,* 85 *N. J. L.* 592.

On January 28th, 1914, the indictment in question was returned by the grand jury impaneled as aforesaid.

On February 2d, 1914, the record in *Hudspeth v. Swayze* was remitted from the Court of Errors and Appeals to the Supreme Court.

On February 9th and 10th, 1914, the trial and conviction of the defendant took place.

Now the defendant contends that he was not indicted by a grand jury drawn, impaneled and sworn according to law.

We think he was. He was indicted by a grand jury drawn, impaneled and sworn pursuant to the provisions of the "Fielder act." It is obvious that the "Fielder act" was in effect on November 24th, 1913, when the grand jurors were drawn because by the terms of the "Chancellor-Sheriff act," by which it is said to have been repealed, it was not to become effective until November 25th, 1913. Moreover, on November 22d, 1913, the "Chancellor-Sheriff act" was decided by the Supreme Court to be unconstitutional. Hence the "Fielder act" was in effect, not only when the jury was drawn, but it was also in effect on December 9th, 1913, when the grand jury was impaneled and sworn.

The decision of the Supreme Court was the law of the state until reversed by the Court of Errors and Appeals, and acts done by officials in pursuance of the law thereby declared, prior to such reversal, are valid so far as they involve the interests of the public or third persons. *Flaucher* v. *Camden,* 56 *N. J. L.* 244; *Lang* v. *Bayonne,* 74 *Id.* 455. And, as we have pointed out, the decision of the Supreme Court was not reversed until January 23d, 1914.

The legality of a grand jury does not depend at all upon the validity or invalidity of the title of the officer by whom such body is selected or drawn. If the title of such officer is colorable, indictments found by a grand jury selected or drawn by him are as impregnable against attack as if its members had been selected or drawn by an officer whose title was unimpeachable. *State* v. *Zeller,* 83 *N. J. L.* 666.

This conclusion, in effect, disposes of every question raised and argued. And since we have reached such conclusion we have not deemed it necessary to consider whether or not the validity of the grand jury, and of the indictment which it found, might be vindicated under the terms and provisions of the "Chancellor-Sheriff act."

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   11.

*For reversal*—None.